```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                   HOUSTON DIVISION


TRONOSJET MAINTENANCE, INC.,   §
                               §
          Plaintiff,           §
                               §
v.                             §   CIVIL ACTION NO. H-10-3459
                               §
CON-WAY FREIGHT, INC.,         §
                               §
          Defendants.          §
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Tronosjet Maintenance, Inc. (Tronosjet), brings this action against defendant, Con-way Freight, Inc. (Con-way), "to recover monetary damages for the in-transit damage and loss to its cargo consisting of an aircraft landing gear and related components carried over the road from St. Stephen, New Brunswick, Canada to Fort Worth, Texas in March 2009."[1]  Tronosjet seeks to recover $165,000 plus reasonable and necessary incidental damages.[2]  Pending before the court is Defendant Con-way Freight, Inc.'s Motion for Summary Judgment and Brief in Support Thereof (Docket Entry No. 13).  For the reasons explained below, Con-way's motion for summary judgment will be granted.

### I. Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law

---

[1] Original Complaint, Docket Entry No. 1, p. 1 ¶ 1.

[2] Id. at 3 ¶ 10.

entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000).

## II. Undisputed Facts

The relevant evidence is undisputed.[3] On March 11, 2009, a Straight Bill of Lading 992-066331 (BOL) was issued for a shipment

---

[3]Opposition to Motion for Summary Judgment, Docket Entry No. 16, p. 2 (acknowledging that "Tronosjet does not dispute the clear majority of facts set forth in those parts of the Motion [for Summary Judgment] entitled, 'Summary' and 'Background'").

of cargo from Canada to the United States.  The BOL identifies the shipper as the Tronosjet Maintenance, Inc., Summerside, PE, the customs broker as AIT Worldwide Logistics, Grapevine, Texas, and the consignee as Montex Drilling, Fort Worth, Texas.  The "SPECIAL AGREEMENT" box for declaring value and agreeing to pay for excess liability is blank.  The BOL identifies the cargo as three crates of landing gear, and contains the following notation:  "*Interline with Conway Freight in New Brunswick."[4]

Con-way's Pro History shows the following sequence of events in the cargo's carriage:  On March 13, 2009, the cargo was picked up in St. John, New Brunswick, Canada.[5]  On March 17, 2009, the cargo was transloaded to another trailer, carried from Canada across the border to the United States, and transloaded to another trailer in the United States.  On March 18, 2009, the cargo was transloaded to another trailer.  On March 19, 2009, the cargo was

---

[4]Straight Bill of Lading, Exhibit A to Defendant Con-way Freight, Inc.'s Motion for Summary Judgment and Brief in Support (Con-way's Motion for Summary Judgment), Docket Entry No. 13.

[5]Exhibit B to Opposition to Motion for Summary Judgment, Docket Entry No. 16, p. 1 ("Origin Pickup: 03/13/2009 (XJJ of CEA) St. John, NB, CA").  At pp. 2-3 of its Opposition to Motion for Summary Judgment, Docket Entry No. 16, Tronosjet asserts that the shipment originated in Prince Edward Island; this assertion is contradicted by both Pro History and the Original Complaint, Docket Entry No. 1, p. 1, where Tronosjet states that the cargo was "carried over the road from St. Stephen, New Brunswick, Canada to Fort Worth, Texas in March 2009."  Although there may be a dispute about where in Canada the shipment originated, there is no dispute that the shipment originated in Canada.  Any dispute about where in Canada the shipment originated is immaterial to the issues raised in Con-way's Motion for Summary Judgment.

transloaded to another trailer and physical damage to the crates was noted. On March 23, 2009, the cargo was delivered to Montex Drilling in Fort Worth, Texas.[6]

### III. Analysis

Con-way seeks summary judgment

> that Plaintiff's claims for alleged damage to cargo carried from New Brunswick, Canada to Forth Worth, Texas under the Con-way BOL are subject to the limitation of liability set forth in the Con-way BOL and Tariff CNWY-199, being 10 cents (CAN) per pound or, alternatively, $2.00 (CAN) per pound (or $4.41 (CAN) per kilogram), regardless of whether Canadian or U.S. law is applied to interpret the contractual agreement of the parties.[7]

Without disputing that its claims for damages would be subject to the limitation of liability set forth in the Con-way BOL and Tariff CNWY-199 if subject to Canadian law, Tronosjet argues that Con-way's Motion for Summary Judgment should be denied because the claims for damages asserted in this action are subject to United States law, i.e., the Carmack Amendment, and

> because material issues of fact exist about whether (1) Con-Way obtained Tronosjet's agreement as to its choice of liability, (2) gave Tronosjet a reasonable opportunity to choose between two or more levels of liability, or (3) issued to Tronosjet a receipt or bill of lading before moving the shipment.[8]

---

[6]Opposition to Motion for Summary Judgment, Docket Entry No. 16, p. 3 (citing Con-way's Pro History, Exhibit B, pp. 1-4).

[7]Con-way's Motion for Summary Judgment, Docket Entry No. 13, p. 13.

[8]Opposition to Motion for Summary Judgment, Docket Entry No. 16, p. 2.

-4-

For the reasons explained below, the court concludes that Con-way is entitled to summary judgment that Tronosjet's claims are subject to the limitation of liability set forth in the Con-way BOL and Tariff CNWY-199 regardless of whether the claims are subject to Canadian or United States law. Con-way has presented undisputed evidence that it satisfied the elements necessary to limit its liability under the Carmack Amendment, and Tronosjet has failed to raise a genuine issue of material fact for trial by presenting evidence from which a reasonable fact-finder could conclude that Con-way did not satisfy the elements necessary to limit its liability under the Carmack Amendment.

**A.    The Carmack Amendment**

The Carmack Amendment was enacted in 1906 as part of the former Interstate Commerce Act. The Amendment, now codified at 49 U.S.C. § 14706, created a national scheme to compensate shippers for goods damaged or lost during interstate shipping. See <u>New York, New Haven & Hartford R.R. v. Nothnagle</u>, 73 S.Ct. 986, 988 (1953) ("With the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss."). Under the Carmack Amendment a carrier is generally liable "for the actual loss or injury to the property." 49 U.S.C. § 14706(a)(1). However, a carrier may

> establish rates for the transportation of property . . . under which the liability of the carrier for such

>     property is limited to a value established by written or
>     electronic declaration of the shipper or by written
>     agreement between the carrier and shipper if that value
>     would be reasonable under the circumstances surrounding
>     the transportation.

49 U.S.C. § 14706(c)(1)(A).[9]

To establish a prima facie case for damage to goods arising from the interstate transportation of goods by a common carrier, a shipper must show (1) delivery of the goods in good condition, (2) receipt by the consignee of damaged goods, and (3) the amount of damages. See Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003). See also Missouri Pacific Railroad Co. v. Elmore & Stahl, 84 S.Ct. 1142, 1145 (1964) ("[U]nder federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages."). If a prima facie case is established, the carrier may offer evidence that it limited its liability. See Schoenmann Produce Co. v. Burlington Northern and Santa Fe Railway Company,

---

    [9]See Rohner Gehrig Company, Inc. v. Tri-State Motor Transit, 950 F.2d 1079, 1082 (5th Cir. 1992) (en banc) (explaining that under the Carmack Amendment

>     Congress absolutely forbade carriers to limit their
>     liability to shippers for damage to goods. As a result
>     of this legislation, the carriers increased shipping
>     rates sharply. Congress reacted to this rate increase by
>     enacting the so-called Cummings Amendment, now codified
>     at 49 U.S.C. § 10730 (Supp. 1990), which allows a carrier
>     to limit its liability if it complies with I.C.C.
>     [Interstate Commerce Commission] approved rates through
>     tariffs filed by the carrier with the I.C.C.

420 F.Supp.2d 757, 762-63 (S.D. Tex. 2006).  Historically, a carrier could limit its liability under the Carmack Amendment by (1) maintaining a tariff filed with the Interstate Commerce Commission (I.C.C.), (2) obtaining the shipper's written agreement as to its choice of liability, (3) giving the shipper a reasonable opportunity to choose between two or more levels of liability, and (4) issuing a receipt or BOL prior to moving the shipment.  See Hoskins, 343 F.3d at 778 (citing Rohner Gehrig Co., 950 F.2d at 1081 (approving adoption of four-part test articulated in Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1415 (7th Cir. 1987), cert. denied, 108 S.Ct. 1068 (1988)).

**B.   Con-way Limited Its Liability Under the Carmack Amendment**

Con-way argues that even if the Carmack Amendment applies, its liability is limited under the BOL.  Asserting that "the parties entered into a written agreement (the Con-way BOL) authorizing Con-way to limit its liability with respect to the shipment at issue,"[10] and that Tronosjet's "own documentation states that the shipment consisted of 'used landing gear' and, hence, was 'other than new' for the purpose of Tariff CNWY-199,"[11] Con-way argues that it is entitled to summary judgment that its liability for this

---

[10] Con-way's Motion for Summary Judgment, Docket Entry No. 13, p. 10 ¶ 16.

[11] Id. (citing Exhibit E, Report prepared for Travelers Insurance Company, p. 1 ("Montex Drilling Company had ordered a set of used landing gear from Tronos . . .")).

shipment is capped at $819.71 (CAN).[12] Tronosjet does not dispute Con-way's assertion that the cargo at issue was "other than new," and does not challenge the accuracy or reasonableness of Con-way's rates. Instead, citing Hughes, 970 F.2d at 611-12, Tronosjet argues that genuine issues of material fact as to whether Con-way limited its liability in accordance with the Carmack Amendment preclude granting Con-way's motion for summary judgment.[13] Applying the Hughes test the court concludes that Con-way's motion for summary judgment should be granted.

1. Con-way Maintained a Tariff

Since Hughes was decided in 1992, Congress has amended the statutory provisions underlying the Hughes test. The first part of the Hughes test was derived from the Carmack Amendment's provision that the I.C.C. would authorize a motor carrier to establish rates limiting its liability. See Rohner Gehrig, 950 F.2d at 1082. In 1994 Congress eliminated the requirement that carriers of non-household goods file tariffs with the I.C.C. See Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc., 331 F.3d 834, 841 (11th Cir. 2003) (citing Trucking Industry Regulatory Reform Act of 1994, Pub. L. No. 103-311, 108 Stat. 1673, 1683-85, codified at 49 U.S.C. §§ 10702 and 10762). In 1995 Congress added a requirement

---

[12] Id. at 11.

[13] Opposition to Motion for Summary Judgment, Docket Entry No. 16, pp. 9-10 ¶¶ 13-14.

that carriers "provide to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." Id. (quoting I.C.C. Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, 907-10 (quoting 49 U.S.C. § 13710(a)(1)). See also 49 U.S.C. § 14706(1)(B)). As the Eleventh Circuit has observed, "the most that can be said about the latest version of the statute is that a carrier is now required to provide a shipper with the carrier's tariff if the shipper requests it, instead of the carrier filing its tariff with the now defunct I.C.C." Id. Accordingly, courts have held that the Hughes test remains the same with one exception: Instead of maintaining a tariff in compliance with the I.C.C., a motor carrier must now, at the shipper's request, provide the shipper with "a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." 49 U.S.C. § 14706(c)(1)(B). See Emerson Electric Supply Co. v. Estes Express Lines Corp., 451 F.3d 179, 188 (3d Cir. 2006); OneBeacon Insurance Co. v. Haas Industries, Inc., 634 F.3d 1092, 1100 (9th Cir. 2011); Gulf Rice Arkansas, LLC v. Union Pacific R.R. Co., 376 F.Supp.2d 715, 722 (S.D. Tex. 2005) (quoting Fireman's Fund McGee v. Landstar Ranger, Inc., 250 F.Supp.2d 684, 689 (S.D. Tex. 2003) ("If a shipper is unaware of the 'rate, classifications, rules and practices . . . agreed to between the shipper and

-9-

carrier,' the *shipper* has the burden to request a copy of the carrier's tariff.")).

On motions for summary judgment involving the new first part of the Hughes test, courts generally do no more than mention the absence of evidence that the plaintiff requested a copy of the terms. See OneBeacon Insurance Co., 634 F.3d at 1100. See also Gulf Rice, 376 F.Supp.2d at 722 (citing EFS National Bank v. Averitt Express, Inc., 164 F.Supp.2d 994, 1002 (W.D. Tenn. 2001) ("EFS failed to request a copy of the tariff. The bill of lading is a sufficient written agreement by both parties allowing Averitt to limit its liability to the terms stated in Tariff 100."), and Jackson v. Brook Ledge, Inc., 991 F.Supp. 640, 646 (E.D. Ky. 1997) ("[T]he Court finds that because the shipper did not request a copy of the rate, classification, rules and practices, upon which any rate applicable to its shipment or agreed to between the shipper and carrier is based, Brook Ledge was not required to supply the same. However, Brook Ledge could have furnished such information, if it were solicited, as such information was contained in its tariff on file with the ICC as disclosed by Brook Ledge's bill of lading. Accordingly the Court finds that Brook Ledge has satisfied the new first prong of the test.").

Here, citing the Affidavit of Michael Hintzel, Manager of Claims for Con-way, Con-way argues that the first factor of the Hughes test has been satisfied because (1) Con-way maintained a tariff, specifically Tariff CNWY-199, which incorporated the

-10-

limitation of liability, as well as a separate excess valuation charge for full liability; (2) Conway made its tariff available to all members of the shipping public by publishing the tariff on its website; (3) the Con-way tariff is incorporated by reference into the BOL at issue; and (4) Tronosjet is now deemed to have constructive knowledge of the terms of the Con-way tariff.[14] Tariff CNWY-199, effective during March of 2009, contains the following Liability Statement in Item 25:

> **Carrier liability with shipment originating within Canada:** Unless the Spot Quote provisions apply, and unless the Shipper agrees to a Special Agreement, declares the value in the appropriate box on the Bill of Lading and agrees to pay the excess liability charge by initialing where indicated, Carrier's maximum liability is CAN$2.00 per pound (CAN$4.41 per kilogram) per individual lost or damaged piece within the shipment, subject to a maximum total liability per shipment of CAN$20,000.00 and provided further that Carrier's liability on articles other than new articles, such as including but not limited to used, remanufactured, or refurbished articles, shall not exceed ($0.10) ten cents (CAN$) per pound per individual lost or damaged piece within the shipment.[15]

A similar provision appears under the heading "Excessive Value/Liability Charge" in Item 27 of the Tariff.[16] Moreover, the BOL under which the cargo shipped states that "the shipment is

---

[14]Con-way's Motion for Summary Judgment, Docket Entry No. 13, p. 12 ¶¶ 19-20 (citing Affidavit of Michael Hintzel attached thereto at ¶¶ 6-8, and Con-way Tariff CNWY-199-S.3, Exhibit D to Con-way's Motion for Summary Judgment).

[15]Exhibit D to Con-way's Motion for Summary Judgment, Docket Entry No. 13, Item 25 at CNWY 00037.

[16]Id. at CNWY 00049.

received subject to Tariff CNWY-199, Carrier's pricing schedules, terms, conditions, and rules maintained at Carrier's general offices in effect on the date of issue of this Bill of Lading."[17] Because Tronosjet does not dispute that Con-way not only maintained a tariff that incorporated both the limitation of liability at issue and a separate excess valuation charge for full liability, but also published that tariff on its website, and incorporated the tariff by reference into the BOL at issue, the court concludes that Con-way has presented undisputed evidence showing that the first part of the Hughes test is satisfied because Con-way had established rates for different levels of liability and would have made these rates available to Tronosjet upon request.

2. <u>Con-way Obtained Tronosjet's Written Agreement and Gave Tronosjet Reasonable Opportunity to Choose Between Two or More Levels of Liability</u>

With respect to the second and third parts of the Hughes test, Con-way argues that Tronosjet could have elected to declare a value for its shipment and pay excess liability charges pursuant to the Special Agreement provision contained on the BOL, but that Tronosjet deliberately chose not to do so. Con-way explains that

> [u]nder the plain terms of the Con-way BOL, Con-way's liability is limited to "CAN$2.00 per pound (CAN$4.41 per kilogram) per individual lost or damaged piece within the shipment, subject to a maximum total liability per shipment of CAN$20,000.00," or if the articles are "other

---

[17]Con-way's Motion for Summary Judgment, Docket Entry No. 13, p. 2 ¶ 2 (quoting Exhibit A).

than new articles," Con-way's liability is limited to ($0.10) ten cents (CAN$) per pound.[18]

Asserting that "[t]he Special Agreement provision on the through bill of lading gave [Tronosjet] a reasonable opportunity to select the level of liability,"[19] Con-way argues that by leaving blank the declared value spaces in the Special Agreement box of the BOL, Tronosjet made a deliberate choice not to take advantage of this opportunity but, instead, agreed to the limitation of liability contained in the Con-way tariff.[20] Con-way argues that "[t]hese facts compel the conclusion that [Tronosjet] . . . had a more than fair 'opportunity to choose' between different levels of carrier liability, [and] that the limitation was 'reasonable under the circumstances surrounding the transportation' within the meaning of 49 U.S.C. § 14706(c)(1)(A)."[21]

Tronosjet opposes Con-way's Motion for Summary Judgment, but has neither argued nor offered any evidence (1) that the Special Agreement box on the BOL failed to provide Tronosjet a reasonable opportunity to choose between two or more levels of liability for its shipment; or (2) that by leaving blank the declared value

---

[18] Id. at 9 ¶ 14.

[19] Id. at 12-13 ¶ 20.

[20] Id. at 12.

[21] Id. at 13. See also Defendant Con-way Freight, Inc.'s Reply in Support of Its Motion for Summary Judgment (Con-way's Reply), Docket Entry No. 17, pp. 5-6 ¶ 8.

spaces in the Special Agreement box of the BOL, Tronosjet did not agree to the limitation of liability contained in the Con-way tariff. Instead, Tronosjet simply states that Con-way has failed to present evidence that Tronosjet is bound by Con-way's actions.[22]

To satisfy the second and third parts of the Hughes test, the shipper must have had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to make a deliberate and well-informed choice, and the carrier must have obtained the shipper's written agreement. See Rohner Gehrig, 950 F.2d at 1083 ("The choice of liability is inextricably intertwined with a reasonable opportunity to choose, so the focal point of our inquiry is whether Tri-State's proffered B.O.L. gave Rohner a 'reasonable opportunity to choose between two or more levels of liability.'").

Both the BOL and the applicable Con-way tariff clearly state that absent a declared value, Con-way's liability is limited. The court concludes that these statements on both the BOL issued for the shipment at issue and the applicable Con-way tariff provide sufficient notice of the limitation of liability and sufficient opportunity to shippers to reject that limitation by declaring the value of the shipment and agreeing to pay excess liability charges. Absent citations to affidavits or other evidence that contradicts

---

[22] Opposition to Motion for Summary Judgment, Docket Entry No. 16, p. 10 ¶ 14.

the evidence provided by the BOL and the applicable Con-way tariff, Tronosjet has failed to show that there exists genuine issues of material fact for trial regarding the second and/or third parts of the Hughes test. Accordingly, the court concludes that the BOL and tariff that Con-way has presented provide undisputed evidence that Con-way satisfied the second and third parts of the Hughes test by giving Tronosjet a reasonable opportunity to choose between two or more levels of liability, and obtaining Tronosjet's written agreement to Con-way's limitation of liability. See Tran Enterprises, LLC v. DHL Express (USA), Inc., Civil Action No. H-08-2748, 2009 WL 4604660, *10 (S.D. Tex. December 3, 2009), aff'd 627 F.3d 1004 (5th Cir. 2010) ("By leaving the form blank, Nutrition Depot agreed to limit DHL's liability to $100.").[23]

3. Con-way Issued BOL Before Transport

With regard to the fourth part of the Hughes test, "[t]he relevant inquiry is whether the shipper manifested assent to the salient terms of the bill of lading before the shipment commenced."

---

[23]Although the space for the shipper's signature on the BOL attached to Con-way's Motion for Summary Judgment is blank, there is no requirement that the shipper sign the bill of lading prior to shipment, so long as the shipper manifests assent to the contract. See Hoskins, 343 F.3d at 780 (citing American Railway Express Co. v. Lindenburg, 43 S.Ct. 206, 209 (1923) ("Having accepted the benefit of the lower rate dependent upon the specified valuation, the respondent is estopped from asserting a higher value. To allow him to do so would be to violate the plainest principles of fair dealing.")). Id.

Toppan Photomasks, Inc. v. North American Van Lines, Inc., Civil Action No. H0-05-3201, 2007 WL 173904, *2 (S.D. Tex. January 19, 2007).  Here, the BOL is undisputedly dated March 11, 2009,[24] and the Pro History that Tronosjet has submitted shows that the cargo was picked up two days later on March 13, 2009.[25]  Accordingly, the court concludes that Con-way has submitted undisputed evidence that the BOL, which represents the written agreement between the parties, issued before the cargo moved.  Because Tronosjet has failed to present any evidence from which a reasonable fact-finder could conclude otherwise, the court concludes that Con-way has presented undisputed evidence that satisfies the fourth part of the Hughes test.

### IV. Conclusions and Order

For the reasons explained above, the court concludes that undisputed evidence establishes that Straight Bill of Lading No. 992-066331 is a written agreement entered into by the parties that authorized Con-way to limit its liability with respect to the shipment at issue as provided by Con-way Tariff CNWY-199 regardless of whether Canadian or United States law (i.e., the Carmack Amendment) applies to the claims asserted in this action, and that

---

[24]Exhibit A to Con-way's Motion for Summary Judgment, Docket Entry No. 13.

[25]Exhibit B to Opposition to Motion for Summary Judgment, Docket Entry No. 16, p. 1.

the shipment at issue was "other than new" for purposes of that tariff because the shipment consisted of "used landing gear." Accordingly, Defendant Con-way Freight, Inc.'s Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED**, and Tronosjet's claim is limited to 10 cents (CAN) per pound ($819.71 [CAN]).

**SIGNED** at Houston, Texas, this the 2nd day of August, 2011.

SIM LAKE
UNITED STATES DISTRICT JUDGE